**FILED**

1/25/2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH ARMOUR and JULIE CASTRO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15 CV 10305 |
| | ) | |
| HOMER TREE SERVICES, INC., | ) | |
| HOMER TREE CARE, INC., | ) | Judge Lee |
| HOMER INDUSTRIES, LLC, | ) | |
| HOMER MANAGEMENT, LLC, and | ) | Magistrate Judge Mason |
| RONALD REPOSH, individually, | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED COMPLAINT

Plaintiffs, Elizabeth Armour ("Armour"), and Julie Castro ("Castro"), by their undersigned counsel, complain of Defendants, Homer Tree Services, Inc. ("HTS"), Homer Tree Care, Inc. ("HTC"), Homer Industries, LLC ("HI"), Homer Management LLC ("HM")(hereafter sometimes collectively the "Homer Companies"), and Ronald Reposh ("Reposh"), individually, as follows:

### JURISDICTION AND VENUE

1.     Plaintiffs are each alleging claims for retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.* ("Whistleblower Act").  Armour also asserts claims against Defendant HTS for severance compensation due and owing under her employment contract, and claims for assault and battery against Reposh, individually, and the Homer Companies.  This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1367.

2.     Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) as Defendants reside in the Northern District of Illinois, and the acts complained of all occurred within this judicial district.

## **PARTIES**

3.   Armour is an adult female residing in the Northern District of Illinois who, at all times relevant, was jointly employed by, and performing the duties of Chief Executive Officer for, the Homer Companies.  Under Reposh's direction and supervision, Armour was, *inter alia,* not only paid by each of the Homer Companies, but was responsible for the operation, coordination and management of the office(s) and financial affairs the Homer Companies, from or about July 7, 2014, until she was abruptly terminated by Reposh on or about August 21, 2015.

4.   Castro is also an adult female residing in the Northern District of Illinois who was employed by HTS and HM to provide human resource services for the Homer Companies, as Director of Human Resources, from or about October 7, 2014, until she was abruptly terminated at Reposh's direction, on or about August 18, 2015.

5.   The Homer Companies are affiliated companies, headquartered in Lockport, Illinois, that at all relevant times were owned, controlled and operated by Reposh, or at his direction, and are engaged in the business of providing municipal, residential and commercial tree removal/trimming, land clearing, mulch production and/or related services.

6.   Reposh is an adult male resident of the Northern District of Illinois, who at all relevant times owned, controlled and operated The Homer Companies, and who had full supervisory authority and control over both Armour and Castro.  At all relevant times, Reposh was also the President and owner of both HTS and HTC, as well as owner and managing member of HM and HI.

## COUNT I
### (RETALIATION IN VIOLATION OF 42 U.S.C. § 1981 - ARMOUR)

1.    Plaintiff Armour adopts paragraphs 1 - 6 above as paragraph 1 of Count I.

2.    At all relevant times during Armour's employment, Reposh made ongoing discriminatory and offensive racial remarks, jokes, and demeaning slurs about African-Americans - whom he openly referred to as "ni--ers," including, but not limited to, the fact that: (a) he "hates" African-Americans and considers them inferior to Caucasians; (b) he would not interview or hire African-Americans for any position at the Homer Companies; (c) any job applications with names that even "sounded black" were to be ignored; (d) Armour was prohibited from considering, interviewing or hiring African-Americans for employment at the Homer Companies; (e) Armour was to direct Castro, as Director of Human Resources, not to consider, interview or hire any African-Americans at the Homer Companies; (f) he openly made offensive racial jokes and encouraged others at the Homer Companies to do likewise with impunity; and (g) he directed Armour and Castro not to implement or enforce certain anti-discrimination policies at the Homer Companies, including those affecting African-Americans.

3.    The effect of Reposh's aforesaid employment practices, policies and/or directives at the Homer Companies – about which Armour reported, complained about and repeatedly objected to Reposh, and others – are discriminatory, unlawful and deprive African-Americans of the equal opportunity to enjoy, make and enforce contracts, and otherwise adversely affect them because of their race and/or ethnicity.

4.    The aforesaid discriminatory policies, practices, and directives as alleged herein, violate Section 1981.

5. Section 1981 also prohibits retaliation and other adverse job actions against Armour for, *inter alia,* opposing, reporting and/or protesting discriminatory employment practices against African - Americans based on their race and/or ethnicity.

6. On or about August 21, 2015, Armour was unlawfully harassed, retaliated against and terminated from her employment by Reposh because of her objections, complaints, and protests about said unlawful employment practices, policies and directives, and/or for refusing to follow his unlawful directives.

7. As a direct and proximate result of said retaliation and the termination of her employment, Armour has lost, and will continue to lose, compensation and other benefits of employment, has suffered emotional distress, depression, and anxiety about her ability to support herself, her future employability, career loss/future earning capacity, as well as suffering humiliation, embarrassment, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

8. The aforesaid conduct was willful, wanton and/or in reckless disregard for Armour's federally protected rights and warrants the imposition of punitive damages.

## Relief Sought

**WHEREFORE,** Plaintiff, **Elizabeth Armour,** prays that this Court grant her following relief against Defendants, Ronald Reposh, individually, as well as Homer Tree Services, Inc., Homer Tree Care, Inc., Homer Industries LLC, and Homer Management, LLC, jointly and severally:

> A. Award her appropriate back pay and future earnings, and reimbursement for other employment related losses, in an amount to be shown at trial, plus interest so as to render her whole from the unlawful retaliation and/or termination.

> B. Award her compensatory damages for emotional pain, humiliation, depression and anxiety, and for career loss/lost earning capacity, in an amount to be shown at trial.

C.    Award her punitive damages in an amount to be determined at trial for Defendants' willful, wanton or reckless misconduct.

D.    Award her legal fees, litigation costs, any additional relief that is warranted in this action.

## COUNT II
### (RETALIATION IN VIOLATION OF 740 ILCS 174- ARMOUR)

1.    Plaintiff Armour adopts paragraphs 1 - 5 of Count I, above, as paragraph 1 of Count II.

2.    At all relevant times, the Whistleblower Act provided, in pertinent part, that an Illinois employer may not retaliate against an employee for refusing to participate in an activity that he or she reasonably believes would result in a violation of any state or federal law, rule, or regulation.

3.    In view of the foregoing, Armour was concerned, and reasonably believed that the above-alleged conduct by Reposh, and/or one or more of the Homer Companies, violated one or more state or federal laws, rules or regulations prohibiting racial discrimination at the Homer Companies - including Section 1981, the Civil Rights Act of 1991, and the Illinois Human Rights Act – and Armour therefore also refused to follow or participate in what she reasonably believed were unlawful and discriminatory directives to ignore, disqualify, reject and/or segregate employees, applicants, or candidates for hire, based on their race and ethnicity.

4.    In addition, at all relevant times, Armour refused to follow or participate in other directives by Reposh, and affecting one or more of the Homer Companies, that she reasonably believed were unlawful, including, but not limited to:

a. In July and August of 2015, directing that injured workers who invoked their rights under the Illinois Worker's Compensation Act be disciplined, retaliated against and/or fired;

b. In August of 2015, directing that employees who complain, or otherwise invoke their rights to work in a safe and/or properly ventilated workplace, as required by OSHA (or applicable Illinois worker or occupational safety/hazard law), be disciplined, retaliated against and/or fired;

c. Directing that certain construction and related activities commence without first obtaining legally required permits or licenses – including to effect the approval and installation of above-ground fuel tanks located adjacent to the Homer Companies' corporate office, in Lockport, Illinois, in or about July of 2015;

d. Directing her to ignore, misclassify, refuse to pay overtime, or otherwise violate the federal Fair Labor Standards Act ("FLSA"), and/or Illinois labor laws, at one or more of the Homer Companies; and

e. Other directives by Reposh and/or the Homer Companies that Armour reasonably believed would violate other federal and/or Illinois laws, rules or regulations, including tax laws, rules and regulations.

5. As a direct and proximate result of Armour's refusal to follow or participate in one or more unlawful acts, requests or directives, as alleged, she was retaliated against and terminated from her employment, and has lost, and will continue to lose compensation and other benefits of employment, has suffered emotional distress, depression, and anxiety about her ability to support herself, her future employability,

and career loss/lost future earning capacity, as well as suffering humiliation, depression, anxiety, embarrassment, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

6. All of the aforesaid acts of retaliation against Armour violated the Illinois Whistleblower Act.

## **Relief Sought**

**WHEREFORE,** Plaintiff, **Elizabeth Armour,** prays that this Court grant her following relief against Defendants, Homer Tree Services, Inc., Homer Tree Care, Inc., Homer Industries LLC, and Homer Management, LLC, jointly and severally:

> A. Award her reinstatement to her former position with the same seniority status that she would have had, but for the subject violations of the Illinois Whistleblower Act or, alternatively, for an appropriate award of lost front pay.

> B. Award her appropriate lost back pay and benefits, and reimbursement for other employment related losses since her termination, plus interest, so as to render her whole from the unlawful termination.

> C. Award her compensatory damages for emotional stress, humiliation and anxiety, and for career loss/lost earning capacity, in an amount to be shown at trial as authorized by law.

> D. Award her litigation costs, expert witness fees, reasonable attorney's fees, and any other relief as authorized by 740 ILCS 174.

## **COUNT III**
### **(BREACH OF EMPLOYMENT CONTRACT - ARMOUR)**

1. Plaintiff Armour adopts paragraphs 1 - 5 of Count II, above, as paragraph 1 of Count III.

2.    On or July 7, 2014, Armour agreed to and executed a written "Chief Executive Officer Employment Agreement" (the "Agreement") with Defendant HTS - a true copy of which is attached hereto as Exhibit "A".

3.    Under the terms of the Agreement, Armour was engaged to "operate, coordinate, and manage the office and financial affairs of HTS and its affiliated companies" (including HTC and, subsequently, HM).  On or about August 21, 2015, Armour was unlawfully terminated by Reposh "without cause," and in retaliation for engaging in various legally protected activities.

4.    Sections 2 and 5 of the Agreement provide, *inter alia*, that Armour is entitled to receive 30 days written notice by HTS before she can be terminated and, in addition, that if she is terminated "without cause" then HTS shall also pay her the equivalent of "four (4) months of [her] regular compensation, plus benefits."

5.    In breach of the Agreement, HTS has wrongfully failed and refused to honor said terms of the Agreement and pay Armour her contractually mandated termination pay in lieu of 30 days notice, and the equivalent of four (4) months of [her] regular compensation, plus benefits - *i.e.* the total sum of approximately $107,098.87 (One Hundred Seven Thousand, Ninety-Eight Dollars and Eighty-Seven Cents).

6.    As a direct and proximate result of HTS's breach of contract, Armour has and will continue to sustain damages, including but not limited to lost income, lost interest, and costs of suit in an amount to be determined at trial.

**WHEREFORE,** Plaintiff, **Elizabeth Armour**, prays that judgment be entered in her favor, and against Defendant, Homer Tree Service, Inc., for the sum of not less than $107,098.87, exclusive of costs and interest, and for any other appropriate relief.

## COUNT IV
### (ARMOUR'S CLAIMS FOR ASSAULT AND BATTERY AGAINST REPOSH)

1.     Plaintiff Armour adopts paragraph 1 of Count I, above, as paragraph 1 of Count IV.

2.     At all times relevant during Armour's employment at the Homer Companies, Armour was subjected to ongoing, abusive and unwelcome physical contact by Reposh, her direct superior, including but not limited to the following:

    a.   Touching, grabbing, hugging and kissing her;

    b.   Pulling up her shirt and grabbing her breasts;

    c.   Exposing his penis and pressing himself into her while pinning her against a wall; and

    d.   Touching and grabbing her hair, neck, crotch, waist and buttocks.

3.     All of the aforesaid physical contact, as well as various sexually threatening and abusive comments by Reposh towards Armour, were intentional, malicious and caused Armour to have fear and apprehension, and constituted an assault and battery upon her.

4.     As a direct and proximate result thereof, Armour has suffered physical harm and related manifestations, severe emotional distress, anguish, depression, humiliation, anxiety, as well as painful and lasting embarrassment, and for which she has sought treatment and counseling.

5.     The aforesaid misconduct by Reposh was willful and wanton, and warrants the imposition of punitive damages against him.

**WHEREFORE,** Plaintiff, **Elizabeth Armour**, prays this this Court grant the following relief against Ronald Reposh:

A. Grant judgment in her favor, and against Reposh, individually, in the sum of not less than $750,000, or in an amount to be determined at trial, for compensatory damages for pain, suffering and psychic injury.

B. Grant judgment in her favor, and against Reposh, individually, in the sum of not less than $750,000, or in an amount to be determined at trial, for punitive damages for his willful and wanton misconduct.

C. Grant her any additional relief to which she is entitled.

## COUNT V
### (ARMOUR'S CLAIMS FOR ASSAULT AND BATTERY AGAINST THE HOMER COMPANIES)

1. Plaintiff Armour adopts paragraphs 1 – 5 of Count IV, above, as paragraph 1 of Count V.

2. At all times relevant, Reposh owned, controlled, and approved all business, financial and operational decisions at the Homer Companies, and was, therefore, the "alter ego" of the Homer Companies.

3. In view of the foregoing, the Homer Companies, and each of them, were not only informed and knew of Reposh's aforesaid assault and battery upon Armour, but acquiesced in, tolerated, and permitted such misconduct to continue despite her complaints and protests to Reposh, and are thus liable for Reposh's said misconduct.

4. As a direct and proximate result of said assault and battery, Armour has suffered physical harm and related manifestations, severe emotional distress, depression, humiliation, anxiety as well as painful and lasting embarrassment and for which she has sought treatment and counseling.

5. The aforesaid conduct warrants the imposition of punitive damages against one or more of the Homer Companies.

**WHEREFORE,** Plaintiff, **Elizabeth Armour,** prays that this Court grant her following relief against Defendants Homer Tree Service, Inc., Homer Tree Care, Inc., Homer Industries LLC, and Homer Management, LLC, jointly and severally:

A. Grant judgment in her favor, and against Homer Companies, jointly and severally, in the sum of not less than $750,000, or in an amount to be determined at trial, for compensatory damages for pain, suffering and psychic injury.

B. Grant judgment in her favor, and against Homer Companies, jointly and severally, in the sum of not less than $750,000, or in an amount to be determined at trial, for punitive damages for said willful and wanton misconduct.

C. Grant her any additional relief to which she is entitled.

**COUNT VI**
**(RETALIATION IN VIOLATION OF 42 U.S.C. § 1981 - CASTRO)**

1.      Plaintiff Castro adopts paragraph 1 of Count I as paragraph 1 of Count VI.

2.      At all relevant times during her employment at the Homer Companies, Reposh made ongoing, discriminatory, mean-spirited and offensive racial remarks, jokes, and slurs about African-Americans, whom he openly referred to as "ni--ers," including but not to limited to the fact that: (a) he "hates" African-Americans and considers them inferior to Caucasians; (b) he would not interview or hire African-Americans for any position at the Homer Companies; (c) any job applications with names that even "sounded black" were to be ignored; (d) Castro, as Manager of Human Resources, was not permitted to consider, interview or hire any African-Americans at the Homer Companies; (e) he openly made offensive racial jokes and encouraged others at the Homer Companies to do likewise with impunity; and/or (f) Castro should not implement or enforce certain anti-discrimination policies at the Homer Companies, including those affecting African-Americans.

3.    The effect of the Reposh's aforesaid employment practices, policies and/or directives at the Homer Companies – about which Castro reported, complained, and repeatedly objected to Reposh, Armour and others – are discriminatory, unlawful and deprive African-Americans of equal opportunities to enjoy, make and enforce contracts, and otherwise adversely affect them because of their race and/or ethnicity.

4.    The aforesaid discriminatory policies, practices, and directives as alleged herein, violate Section 1981.

5.    Section 1981 also prohibits retaliation and other adverse job actions against Castro for, *inter alia,* opposing, reporting and/or protesting unlawful employment practices that discriminate against African-Americans based on their race and/or ethnicity.

6.    Reposh unlawfully harassed, retaliated against and terminated Castro from her employment on or about August 18, 2015, because of her objections, complaints, protests and/or refusal to follow his unlawful employment practices, policies and directives, as alleged.

7.    As a direct and proximate result of said retaliation and termination of her employment, Castro has lost, and will continue to lose, compensation and other benefits of employment, has suffered emotional distress, depression and anxiety about her ability to support herself, her future employability, career loss/lost future earning capacity, as well as suffering humiliation, embarrassment, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

8.    The aforesaid conduct was willful, wanton and/or in reckless disregard for Castro's federally protected rights and warrants the imposition of punitive damages.

## Relief Sought

**WHEREFORE,** Plaintiff, **Julie Castro,** prays that this Court grant her following relief against Defendants, Ronald Reposh, individually, Homer Tree Service, Inc., and/or Homer Management, LLC, jointly and severally:

> A.     Award her appropriate back pay and future earnings, and reimbursement for other employment related losses, in an amount to be shown at trial, plus interest so as to render her whole from the unlawful retaliation and/or termination.

> B.     Award her compensatory damages for emotional pain, humiliation and anxiety, and for career loss/lost earning capacity, in an amount to be shown at trial.

> C.     Award her punitive damages in an amount to be determined at trial for Defendants' willful, wanton or reckless misconduct.

> D.     Award her legal fees, litigation costs, any additional relief that is warranted in this action.

## COUNT VII
### (RETALIATION IN VIOLATION OF 740 ILCS 174- CASTRO)

1.     Plaintiff Castro adopts paragraphs 1 - 6 of Count VI, above, as paragraph 1 of Count VII.

2.     At all relevant times, the Whistleblower Act provided, in pertinent part, that an Illinois employer may not retaliate against an employee for refusing to participate in an activity that he or she reasonably believes would result in a violation of state or federal law, rule, or regulation.

3.     In view of the foregoing, Castro was concerned, and reasonably believed that that the above-alleged conduct by Reposh, and/or one or more of the Homer Companies, violated one or more state or federal laws, rules or regulations prohibiting racial discrimination at the Homer Companies - including Section 1981, the Civil Rights Act of 1991, and the Illinois Human Rights Act – and Castro therefore also refused to

follow or participate in what she reasonably believed were discriminatory directives to ignore, disqualify, reject and/or segregate employees, applicants, or candidates for hire, based on their race and ethnicity.

4. In addition, at all relevant times, Castro refused to follow or participate in other directives from Reposh that she reasonably believed were unlawful, and that affected one or more of the Homer Companies, including but not limited to:

a. In July and August of 2015, directing that injured workers who invoked their rights under the Illinois Worker's Compensation Act be disciplined, retaliated against and/or fired;

b. Directing her to ignore, misclassify, refuse to pay overtime, or otherwise violate the federal Fair Labor Standards Act ("FLSA"), and/or Illinois labor laws, at one or more of the Homer Companies; and

c. Other directives by Reposh that Castro reasonably believed would violate other federal or state laws, rules or regulations.

5. As a direct and proximate result of Castro's refusal to follow or participate in one or more of the alleged unlawful acts, requests or directives by Reposh and/or one or more of the Homer Companies, she was terminated from her employment and has lost, and will continue to lose compensation and other benefits of employment, has suffered emotional distress, and anxiety about her ability to support herself, career loss/ lost future earning capacity, as well as suffering humiliation, embarrassment, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

6. All of the aforesaid retaliation against Castro violated the Whistleblower Act.

## Relief Sought

**WHEREFORE**, Plaintiff, **Julie Castro,** prays that this Court grant the following relief against Defendants, Homer Tree Services, Inc., and/or Homer Management, LLC, jointly and severally:

A. Award her reinstatement to her former position with the same seniority status that she would have had, but for the subject violations of the Illinois Whistleblower Act or, alternatively, for an appropriate award of lost front pay;

B. Award her appropriate lost back pay and benefits, and reimbursement for other employment related losses since her termination, plus interest, so as to render her whole from the unlawful termination;

C. Award her compensatory damages for emotional stress, humiliation and anxiety, in an amount to be shown at trial as authorized by law.

D. Award her litigation costs, expert witness fees, reasonable attorney's fees, and any other relief as authorized by 740 ILCS 174.

## - PLAINTIFFS REQUEST A JURY TRIAL -

**Respectfully submitted,**

**Plaintiffs, Elizabeth Armour and Julie Castro**

By: /s/ Randall B. Gold
   One of Their Attorneys

Dated: January 19, 2016

Randall B. Gold, Esq.
Fox & Fox, S.C.
111 East Wacker Dr.
Suite 2600
Chicago, IL 60601
312-526-3220
rgoldlaw@aol.com

## CHIEF EXECUTIVE OFFICER EMPLOYMENT AGREEMENT

This Agreement is hereby entered into on this _9th_ day of July, 2014, by and between HOMER TREE SERVICES, INC., an Illinois Corporation, having its corporate office at 14000 S. Archer, Lockport, Illinois 60441, (Company") and ELIZABETH A. ARMOUR, Chief EXECUTIVE Officer (CEO).

WHEREAS, HOMER TREE SERVICES, INC. and HOMER INDUSTRIES, LLC, and HOMER CARE, INC. are engaged in the business of tree clearing and mulching in a multi-state area; and

WHEREAS, HOMER TREE SERVICES, INC. and its affiliate companies are desirous of engaging the services of CEO to operate, coordinate, and manage the office and financial affairs of Company and its affiliate companies; and

WHEREAS, CEO represents that she has the experience and expertise to conduct the business and financial affairs of Company; and

WHEREAS, CEO and Company are desirous of entering into an Employment Agreement, the terms of which are set forth herein.

NOW, THEREFORE, in consideration of the mutual promises set forth in this Agreement, the receipt and sufficiency is hereby acknowledged, the parties hereto agree as follows:

1. <u>Confidentiality and Company Property</u>. During and at all times after CEO's employment:

   a) CEO will not disclose to any person or entity, without the Company's prior consent, any confidential or secret information, whether prepared by her or others.

˘1˘



PLAINTIFF'S EXHIBIT

NO. A

b) CEO will not directly or indirectly use any such information other than as directed by the Company in writing.

c) CEO will not, except in the furtherance of the business of the Company, remove confidential or secret information from the premises of the Company without the prior written consent of the Company.

d) All products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, "field guides," memoranda, lists and other property compiled or produced by CEO or delivered to CEO by or on behalf of the Company or by its customers (including, but not limited to, customers obtained by the CEO), whether or not confidential, shall be and remain the property of the Company and shall be subject at all times to its direction and control.

e) CEO will, upon termination of her employment for whatever reason, with our without cause, promptly deliver to the Company all originals and copies (whether I note, memo or other document form or on video, audio or computer tapes or discs or otherwise) of all confidential or secret information, and of all property referred to in Section 1(d), that is in his possession, custody or control, and whether prepared by CEO or others.

f) Confidential information includes, but is not limited to:

    (I) business, pricing and management methods;

    (ii) finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

    (iii) names or arrangements with, or other information relating to the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives, and other persons who have business relationships with the Company or who are prospects for

˅2˅

business relationships with the Company;

    (iv)    technical information, work products and know-how;

    (v)    cost, operating, and other management information systems and other software and programming;

2.   <u>Commencement Date and Term</u>.  CEO agrees that she will commence full time employment with company on or about August 1,2014 and will be so employed for a period of five (5) years, except that in the event the Company terminates the employment without cause, prior to its termination date, the Company shall pay CEO four (4) months of Employees regular compensation plus benefits.  However, in the event the Employee is terminated for cause, no compensation will be paid beyond the date of notice of termination.  Termination for cause shall mean:

    a)    insobriety while acting within the course and scope of employment;

    b)    conviction of a misdemeanor involving moral turpitude or a felony;

    c)    illegal business practices in connection with the Companys business;

    d)    misappropriation of Company assets;

    e)    access of absence of CEO from her employment during usual working hours for reasons other than vacation, disability, or sickness;

    f)    failure to follow directives or engage in disruptive conduct among employees;

    g)    performance by CEO of any act of discrimination or harassment based upon race, sex, national origin, religion, disability, age or other characteristic for which discrimination or harassment is prohibited under applicable federal, state or local law.

3.   <u>Chief Executive Officers Compensation</u>.  In consideration for providing services as the Chief Executive Officer of Homer Tree Services, Inc. and its affiliate companies, CEO will be paid an annual salary of One Hundred Fifty Thousand Dollars ($150,000.00) payable in weekly installments or in the same manner as other employees of the Company.  The

Company further agrees to reimburse CEO for all approved business related expenses incurred by CEO as long as they are approved by the Board of Directors. Company further agrees that should the continued employment of CEO remain during the five (5) year period, the salary shall be adjusted as follows:

| | |
|---|---|
| January 1, 2015 – July 1, 2015 | $175,000.00 |
| July 1, 2015 – and there after | $220,000.00 |

4.  **Employee Benefits**.  During the term of CEOs employment, Company shall extend the same benefits including insurance, hospitalization and the like to CEO as other employees currently receive, and in addition, shall provide CEO with a two week paid vacation per year after CEO has completed one year of service.  CEO understands that Company's business operation is primarily conducted during the spring and summer months and CEO will make a reasonable effort to select vacation during the non-peak season and will not accumulate vacation beyond one year and will further limit vacation to one week at a time.

Company further agrees to provide:

a)  a Company vehicle for Company functions;

b)  director and officer liability as provided to other officers and directors of the Company and group life insurance;

c)  tuition reimbursement for a twenty (20) month program to obtain an MBA for a total tuition reimbursement not to exceed seventy thousand dollars ($70,000.00) for a two (2) year program.  Reimbursement is based upon satisfactory completion of course credit as documented by the attending university.

5.  **Termination**.  This Agreement may be terminated by either party before the end of the term with or without cause, by giving thirty (30) days written notice.  If Company terminates the CEO without cause, it shall pay CEO the equivalent of four (4) months of her

current salary. Upon receiving said payment, CEO will terminate her employment immediately and abide by the provisions of this Agreement. In addition, this Agreement will terminate immediately if any of the following occur:

a) death of CEO;

b) disability of CEO that prevents CEO from performing her duties for a period of more than two (2) calendar months;

c) CEO is convicted, pleads guilty, or enters a plea of no contest to any crime punishable as a felony or involving moral turpitude, or immoral or unethical conduct;

6. <u>Non-Compete Covenant</u>. The consideration for this non-compete covenant includes, among other things, the specialized training and the familiarity with the confidential and proprietary information and techniques provided by Company to CEO and the mutual benefits to be derived by both Company and CEO from the employment relationship. The parties to the Agreement wish to provide a plan to protect the legitimate interest of Company in and to its confidential and proprietary information and techniques which will satisfy the criteria for enforceability of non-compete covenants presently stated in the State of Illinois, and any subsequent amendments. Accordingly, CEO agrees that for a period of two (2) years after leaving Company, CEO will not become a shareholder, member, owner, employee, or manager of a competing company that provides tree clearing and mulching services within a one hundred (100) mile radius of the location wherein CEO regularly provided services.

7. <u>Representations and Warranties by All Parties.</u> Each of the parties represents and warrants, as to herself or itself that:

a) she or it has the capacity, full power and authority to enter into and perform this Agreement,

b) the individual signing on behalf of Company is authorized to do so;

c) she or it has not assigned, encumbered or in any manner transferred all or any portion

of the claims covered by this Agreement;

d)      there are no other charges, complaints, suits, arbitrations or other claims or proceedings pending between the parties (or any other person, agency or entity claiming under or through CEO, on behalf of CEO, or for the benefit of CEO) in any court, before any agency, or in any forum; and

e)      no other person, party or entity has any right, title or interest in any of the claims covered by this Agreement.

8.      <u>Amendment</u>.    This Agreement may be modified, supplemented, canceled or discharged only in writing signed by all of the parties hereto.

9.      <u>Entire Agreement</u>.    This Agreement sets forth and constitutes the entire agreement and understanding and all of the representations and warranties of the parties to this Agreement or any one or more of them in respect of the subject matter contained in this Agreement.    This Agreement supersedes any and all other prior agreements, undertakings, negotiations, correspondence, promises, covenants, arrangements, communications, representations and warranties, whether oral or written (collectively the "Prior Communications") of any party to this Agreement in respect of the subject matter contained in this Agreement, and no party to this Agreement may rely or shall be deemed to have relied upon any Prior Communications.

10.     <u>Notice of CEO Rights</u>.    CEO has been advised that:

a)      she has up to fourteen (14) days to consider this Agreement;

b)      that the Agreement does not take effect until seven (7) days after signing and may be revoked by her during that time period;

d)      she may and should consult an attorney before signing this Agreement; and

e)      she does not waive rights or claims that may arise after the date the waiver is signed. This Agreement will be effective eight (8) days after CEO signs it, providing he has not revoked his agreement during the seven (7) day revocation period in the manner prescribed below.    If CEO does not sign the Agreement or revokes such Agreement in a timely manner than this Agreement will be null and void.    Any revocation must be in writing and received Homer Tree Services, Inc., 1400 S. Archer, Lockport, Illinois 60441, within seven (7) days after this Agreement is originally signed by CEO in order

⌣6⌣

to be effective.

11.   <u>Waiver</u>.   No failure to exercise, and no delay in exercising, any right, power or privilege under this Agreement shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the exercise of any other right, power or privilege.   No waiver of any breach of any provision shall be deemed to be a waiver of any preceding, simultaneous, or succeeding breach of the same or any other provisions, nor shall any waiver be implied from any course of dealing between the parties.   No extension of time for performance of any obligations or other acts hereunder shall be deemed an extension of time for performance of any other obligations or any other acts.

12.   <u>Successors and Assigns</u>.   This Agreement shall be binding upon and insure to the benefit of the parties and their respective heirs, executors, administrators, personal representative, successors and assigns.

13.   <u>Further Assurances</u>.   Each party agrees to and shall execute and deliver such further instruments and do such further acts and things as may reasonably be required to carry out the intent and purposes of this Agreement.

14.   <u>Construction</u>.   Whenever applicable in this Agreement, the singular and the plural, and the masculine, feminine and neuter shall be freely interchangeable, as the context requires.   The Paragraph headings or titles shall not in any way control the construction of the language herein, such headings or titles having been inserted solely for the purpose of simplified reference.   Words such as herein, hereof, hereto, hereinafter, hereby, and herein above when used in this Agreement refer to this Agreement as a whole, unless otherwise required by the context.

15.   <u>Counterparts</u>.   This Agreement may be executed in counterparts, each of which may be signed separately and may be enforceable as an original, but all of which together shall constitute but one agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by affixing their signatures and the date of execution where indicated below.

HOMER TREE SERVICES, INC.
an Illinois Corporation

By: _____          _____

Ronald Reposh, President                                      Elizabeth A. Armour

ValerieSmith\MyDocuments\Agreements\Employment Agreement - Homer Tree

˅8˅